We will hear argument first this morning in Case 24-556, Fernandez v. United States. Mr. Groenstein? Mr. Chief Justice, and may it please the Court, when Congress established the Extraordinary and Compelling Reason Standard for sentence reductions under Section 3582, it chose words that set a high bar for when courts may grant such motions. It also chose words that do not prescribe what types of reasons will qualify. Instead, it delegated that task to the Sentencing Commission and required that district courts comply with the Commission's guidance when exercising their discretion under the statute. This case presents the question whether Congress has implicitly prohibited district courts and the Sentencing Commission from considering any reasons that may also be alleged as grounds for habeas relief. It has not. Under the plain meaning of the statute, if a court finds an error that significantly increased the length of the defendant's sentence, that fact can contribute to a finding of extraordinary and compelling reasons to reduce the sentence. And even when a court finds no error, it may nonetheless decide that the circumstances surrounding the defendant's sentence were so unusual and unfair as to be extraordinary and compelling. That's what happened here. The government's position is extreme. It contends that no argument related to a defendant's judgment may even be considered in the extraordinary and compelling calculus. It posits that only personal circumstances, like age and illness, are relevant. Our position is modest. We recognize that personal circumstances are common reasons that courts find to be extraordinary and compelling. But we reject the government's view that courts can never consider an error or unfairness in a defendant's sentence in that analysis. Allowing courts to grant a sentence reduction in rare cases based in part on circumstances that could have been addressed on habeas will not frustrate the habeas statute's procedural limitations. There is no basis to adopt the government's non-literal reading of 3582. I welcome the court's questions. Do you think the term compassionate release suggests the circumstances that you have in this case? Your Honor, the term compassionate release is a term that has been used colloquially and was used at one point in a Department of Justice regulation. We certainly concede that that term does seem to relate to personal circumstances, but it doesn't necessarily foreclose the possibility that courts would consider other issues related to the fairness of the defendant's sentence. During the years that the Bureau of Prisons actually initiated this process, were there any circumstances in which a trial error would be the basis of the motion? Certainly, there were very few cases, period, when the DOP was involved. Even in the few cases, were there any of this nature? There were not, Your Honor. What was the nature of those? Those were generally where a prisoner was terminally ill or old. In other words, personal circumstances. They were certainly personal circumstances, but we also saw, as our amicus fam on page 15 of their brief, they cite the Diaco case, which relates to the predecessor, 4205G, where there was one case relating to sentencing disparities, and that was one of the only two cases that are published about the use of 4205G. There were two cases by DOP where they basically referenced as part of the circumstances a change in law, correct? Banks, U.S. v. Banks, 428F sub 1088, 1977, and in that case, the court considered rehabilitation, which is now prohibited by the new policy statement, as being a sole ground, correct? That's correct, and the case that Your Honor referred to is— But nevertheless, back then, DOP relied on rehabilitation, correct? Rehabilitation, absolutely, yes. And the Diaco case, I think you're minimizing it, that also was a New Jersey case where BOP made a motion to the court for compassionate release, and one of the factors was a change of sentencing, correct? Absolutely, Your Honor. So the two published opinions were both BOP and weren't limited to just personal circumstances? That's certainly correct, absolutely. Counsel, you say the situations in which these would arise will be rare and unusual. Why in the world would that be the case? You've got somebody sitting in jail and they've got 20 more years to look at, and you go in and say, gosh, I think there's like a 1% chance, you know, you might be able to get out. The prisoner is going to say, oh, okay, it's only 1%, let's forget about it. You know, every lawyer would bring these claims, and some judges are going to grant them and some are not going to grant them, and I'm not sure this factor is not something that Congress took into account. And it does seem that this is, well, why would this remain rare? Certainly, Your Honor, and the reason it would be rare is precisely because of the habeas statute, that the defendant did have an opportunity potentially to raise these issues on habeas. Maybe he procedurally defaulted. He will then have to show why he procedurally defaulted. What were the circumstances surrounding that? Because merely procedurally defaulting on a potentially meritorious claim normally would not be found to be compelling. Did the meaning of extraordinary and compelling reasons change in 2018 when Congress enacted the First Step Act? That's not our position. Our position is that it has meant the same thing, and that would be the dictionary definitions of extraordinary and compelling, since 1984. Well, until 1980, until 2018, only the director of the Bureau of Prisons could invoke the statute, right? That's correct, Your Honor. Now, is it plausible that Congress intended for the director of the Bureau of Prisons to make motions for sentencing reduction based on an assessment of the strength of the evidence or any factor that has to do with the trial proceedings or the sentence that was imposed? I do believe so, that it was at least possible, Your Honor, as referring back to the cases that Justice Sotomayor discussed. Yeah, they're two isolated cases. But doesn't that seem to be far outside of the area of the director of the Bureau of Prisons' expertise? Well, there could be... And responsibility. That's certainly true, Your Honor. But I would suggest that the other agency that is involved in 3582 is the Sentencing Commission. And there was a delegation to the Sentencing Commission whose expertise, of course, goes far beyond the Bureau of Prisons to set up guidelines. But Congress did not delegate that task to the BOP. And why would our consideration be limited, necessarily, to what was in the purview of the BOP? I understand that there was an amendment that allowed the statute or allowed these motions to be brought by a defendant and essentially bypassed the BOP. So I'm wondering if that doesn't indicate Congress's intent to allow for the consideration of factors that the BOP either wasn't able to or wasn't considering. Well, certainly, I'm sorry. Certainly, Justice Jackson, we do agree that when Congress amended the statute, the reason it did so, and it was quite explicit about this, was to allow more circumstances to be  It's our position it's not because the BOP was not able by law to do so, but that the BOP was not bringing enough of these sorts of motions. Well, counsel, you can't have it both ways. Either extraordinary and compelling reasons remained the same after the enactment of the First Step Act, which is what I understood you to tell me, or it changed in 2018, which is what you seem to have suggested in response to Justice Jackson. Which is it? No, I'm not saying that the meaning of the words changed. I'm saying that what Congress intended in the First Step Act was to allow these sorts of motions to be made more broadly. And in any event, I thought your argument was that Congress never gave content to extraordinary and compelling circumstances in the first instance. That in fact, ceded that authority to the Sentencing Commission. Absolutely, and Congress used words that were intentionally broad to allow the Sentencing Commission to give guidance on circumstances that it might not have anticipated when it passed the First Step Act. But the Sentencing Commission has not authorized this kind of activity, has it? At this point, certainly for our case, the Sentencing Commission hadn't spoken. The current policy that was passed— Has spoken or— Has not, for purposes of our case. Right, and in your opening, you therefore said the question is whether they've implicitly prohibited. Isn't the question rather whether they've authorized this kind of motion? Yes, in our view, by using words that are as open-ended as extraordinary and compelling, and then by explicitly delegating to the Sentencing Commission the authority to give guidance, that is the authorization. Congress did two things here. One, it used very broad language, and second, it gave an explicit delegation to the Sentencing Commission. Right, but the commission—I'm sorry. No, no, finish. But the commission hasn't, in turn, said that this kind of legal error is a basis for this kind of motion, correct? At this point, the commission has not spoken to that. The commission— Shouldn't that be—or how relevant should that be in how we think about this? In other words, the commission could—it's subject to legal challenge, but it could identify this kind of circumstance as the basis for such a motion, but it has not done so, even though it has been authorized, as you say, by Congress to elaborate on what the authorization means. Yes, Your Honor. From 2018 until 2023, the commission had provided no guidance that applied to defendant-initiated motions. So at that point, courts were simply acting under the meaning of the statute. So, yes, we certainly expect and we would hope that the commission could provide further guidance on this issue, but it has not yet taken that opportunity. Counsel, can I ask you a question about whether you have to go to 2255 first or whether you can go straight to the compassionate release statute? You answered when the chief was asking you questions. In that interchange, you suggested that the prisoner would have to go to 2255 first because otherwise it wouldn't be a compelling circumstance for release. So are you reading kind of an exhaustion requirement into compelling so that someone in your client's position would have to try to get relief through 2255 first before invoking this other procedure or no? No, Your Honor, that's not our position. Our position is that as part of the extraordinary and compelling analysis, courts would consider whether a defendant sat on his rights or whether he's taken all opportunities to enforce his rights. Even if a defendant did not go through 2255, he would still have the option to argue under 3582 that his situation is extraordinary and compelling, but his position would be weakened by the fact that he did not take the opportunity to enforce his rights. Why would you ever bother with 2255? It seems like it would be a lot easier to just go the other route as long as you have some other circumstances to invoke. Well, the first reason would be that 3582 sets a very high bar for defendants. It has to be extraordinary and compelling. Also, the relief that a defendant can obtain under 3582 is limited. He can only reduce the sentence, whereas the relief under 2255 is much broader. He can attack his conviction. Also, there will be plenty of errors where a court will not feel comfortable simply releasing somebody, but rather would want to correct the error by remanding to the disposition by having a new trial. But a First Act error, I mean, he made the position, and it's true, Congress changed it because those sentences were extreme, right? They were extremely long. And it seems to me that if, indeed, that's extraordinary and compelling, the disparity between similarly situated defendants who get the benefit of the act and who don't, I mean, why wouldn't that be extraordinary and compelling on its own terms? And plus, you know, there are downsides, too, to attacking the validity of your conviction because then you could be subject to retrial. That's right, Your Honor. And it certainly can be extraordinary and compelling. But to date, courts have interpreted the phrase narrowly. There have only been, by our count, 12 cases since 2018 when the first step was enacted where a court, based on an argument that could have been raised on 2255, in part granted a sentence reduction. So courts have been using this very infrequently to grant relief. But 2255 has some harsh limitations. You know, there's a short statute of limitations. There is preclusion of second and successive petitions, for the most part. You know, can't you imagine that defendants who face those limitations and, you know, they filed their 2255 motion three days late or something like that, that this would then be used essentially as an end run around those prohibitions? Your Honor, I don't think it would be an end run precisely because a 3582, even if you do claim an error, will not necessarily be granted. It will be difficult for that. And I agree with Your Honor that there are harsh limitations associated with 2255. And Congress has stated that those limitations are appropriate. But it doesn't mean that in every case, as applied to every defendant, that those limitations are fair. And under certain circumstances, if a defendant misses a limitation by three days, he may not be able to challenge his conviction. But he should at least be able to argue this unfairness, the error and the unfairness of him not having been able to bring it under 2255. I suppose what I'm suggesting is that, you know, Congress, for better or for worse, made a determination that those are the limitations that it wanted. And even to the extent that a judge thinks that they're unfair in all cases, in most cases, that I doubt that Congress meant for individual judges to override its own judgment. Absolutely, Your Honor. And that's certainly a limitation that should be placed on 3582, that a judge cannot simply second-guess a decision made by Congress. But even where Congress creates a generally applicable law, such as a mandatory minimum, it doesn't mean that Congress even believed that in every case that would be fair to the defendant. And all we're asking for is that a judge can consider that the way the law has been applied to this defendant has been unfair or even potentially erroneous. And I thought in response as well to Justice Kagan's point is the thought that the limitations that exist in the habeas context are relative to the actual aim of habeas and goal of habeas, which is vacater of the sentence. It's also not discretionary. Where the defendant has satisfied the criteria of demonstrating that his sentence is unlawful, the court has to, according to the statute, give him habeas. And so, yes, there are strict limitations, but there's also this particular goal. It seems to me that compassionate release is a totally different thing. And so to the extent that compassionate release is about the court's consideration of a sentence reduction, one might think that the same limitations aren't intended to apply, that it's not actually an end run in any meaningful sense. These are just two different regimes, and it doesn't seem to necessarily follow that the considerations in one are mutually exclusive such that they can't arise in the other. That's absolutely correct, Justice Jackson. And it's worth remembering that Section 3582 is as much an act of Congress as Section 2255 and should be given respect. Is there anything in the statute or the legislative history to suggest that Congress wanted the 3582 sentence reduction dynamic to be limited in some way by what could have been raised in habeas or what is happening in the habeas scheme? Is there anything that links those two in the text or even in the legislative history? Absolutely not, Your Honor. And, in fact, the court has given guidance about how, when there's a potential tension between two statutes, how that tension should be resolved. And that's the Prizer line of cases. And it's not simply that one statute can be seen in some circumstances to evade the other. What happened in Prizer in that line of cases was that 1983 was seen as a potential end run around every single constitutional 2255 motion. And that's why the court found that a literal reading of 1983 would swamp the habeas statute. It would wholly frustrate Congress's goals. Here, allowing defendants to bring motions under 3582c1a in the rare circumstances that they could get relief, having a sentence reduction under those circumstances would certainly not frustrate the procedural limitations under habeas. And for reasons I said earlier, courts should actually take into account those procedural In fact, it would enable the kind of, quote, unquote, safety valve that Congress expressly in its reports, et cetera, in describing compassionate release. That's, I think, the design of it. That's absolutely correct, Your Honor. And that's precisely how the two statutes sit one next to the other and not in conflict. Habeas applies generally to claims of error relating to a conviction or sentence. 3582 is the safety valve that can be applied to reduce a sentence should all of the other avenues of relief. But the question is safety valve for what? I mean, not every safety valve is a safety valve for everything. And I would not have thought that it's a safety valve in order to re-litigate trial errors in the way that a 225 motion is. That's the entire point of a 2255 motion. So, you know, I guess I don't see any evidence that Congress meant for this to be a kind of do-over statute. Well, Your Honor, perhaps the best evidence of it is the words that Congress used. They said extraordinary and compelling. Those are words that don't have a specific meaning. And it's given to the court to decide what is an extraordinary and compelling circumstance. So there are cases, we cited the Trenkler case, where someone had been sitting in jail for years. He was sentenced to a life sentence, even though the statute under which he was convicted, which had been amended just slightly after his verdict, and that's why no one picked up on it, said that he could not be convicted, not be sentenced to life. So in that situation, yes, if he could have raised it under 2255, he should have. And maybe that detracts slightly from a finding of extraordinary and compelling. But when he's sitting in jail serving a life sentence that is unlawful, that's all we're saying is that that's something that courts should be able to consider as one of the factors, just as much as age and illness. Suppose that a defendant, a prisoner, claims that there was a fatal error at trial, but doesn't bring a 22, after the direct appeal, does not bring a 2255 for three years, therefore misses the statute of limitations. What would be extraordinary about that situation and would allow the prisoner then to try to get a lot of the relief that could have been obtained, maybe all of the relief that could have been obtained by the motion? Well, Your Honor, certainly there can be some things that are extraordinary and compelling about those circumstances. One, we would have to understand what is the prejudice that that fatal error had on the verdict? Did it change it from an acquittal to a guilty verdict? Then why did the defendant, if this was such a glaring error, why did the defendant not bring a 2255? Maybe he had a mental breakdown and couldn't speak to his lawyers during that time. We don't know the circumstances. All we're saying is that all of the circumstances should be considered as part of the extraordinary and compelling analysis, the same way that personal circumstances. I understand that. To go back to your answer to the Chief Justice's question, suppose you're advising a whole string of prisoners who have been convicted, they've lost on direct appeal, and for one reason or another, they all have claims of trial error or some other flaw in their conviction, but they're all barred from proceeding under 2255 because of the statute of limitations or some other factor, and you look at their claims and you think this is not a ridiculous claim. Would there be any circumstances in which you would not file a motion for sentence reduction? Well, Your Honor, I think the same could be asked of anyone who has any medical illness or is approaching older age. Is there any reason they wouldn't? And this is precisely what the Sensing Commission is authorized to do, is to put in guardrails. But to Your Honor's question, I think the close calls of when there's potential error, I'm not sure that that's the sort of unfairness that courts would typically find. Well, I'm not even talking exclusively about close calls. I'm talking about arguments that are not so frivolous as to damage your professional reputation if you brought them. Wouldn't you always do that? Absolutely, Your Honor. And so this isn't going to be unusual. I think what was going to be standard. I think what would be unusual is that courts would find the compelling circumstances that we're talking about. The First Circuit, I cited in our reply brief, after Trankler in 2022, there's not been a single case that we found where a court has granted a compassionate release motion in a situation where an argument that could have been raised on habeas was the basis for that motion. So we haven't seen that level of motions being filed. But we certainly anticipate, and Congress anticipated, that the Sentencing Commission can put the guardrails. The same way that Congress, that the Sentencing Commission, I'm sorry, I'm just going to say the same way the Sentencing Commission dealt with the flood of these compassionate release motions during COVID. But the Sentencing Commission, like Congress, has not authorized or envisioned or articulated anything close to this kind of legal error being the basis for this kind of relief. And that concerns me because, as Justice Kagan said, you don't see anything suggesting that Congress wanted a do-over kind of statute. But you don't see anything from the Commission either. Your case would be obviously quite a bit stronger if you had the Commission having identified this as they have with some other things. Certainly, Your Honor. But I think that what we should read into the Commission's silence on this is that these will be cases that will be few and far between, where a court would actually find the circumstances. How do we know that? I mean, first of all, as Justice Alito says, I think they'll be far more common that they are brought. So that'll be a whole new docket, one imagines, of these kinds of motions. But how do we know that individual district judges are going to, as your word, be modest or routinely deny these? Well, Your Honor, certainly we haven't seen in the circuits that have allowed it. But if you win this case, one imagines that could supercharge the efforts to use this. That's correct. In fact, you would want that, wouldn't you? Don't you want this to be used more often? Well, I'm just representing my current client. Our legal position is that this should be something that should be in the mix. Certainly, courts will take into account several things that I think would limit their exercise of discretion. First, they would take into the fact that there's the law of the case. If an issue had been raised, courts should not be revisiting it. Second, I think it's likely that these sorts of arguments will be made mostly in cases of mandatory minimum sentences, where the element of unfairness that arises from the error could not have been considered before. So we're seeing how the universe of cases where this sort of argument would be made is getting smaller and smaller. And rehabilitation is certainly an area where you would expect many motions to be brought in. There have been, but still the number of total compassionate release motions is modest. And if the Commission speaks more, we'll be even more modest. Thank you, Counsel. Justice Thomas? Justice Alito? Well, you just mentioned mandatory minimum sentences. There are a lot of district judges and other federal judges who don't like mandatory minimums. So if a prisoner has been sentenced to a mandatory minimum sentence, could a district judge say if a motion under 3582 is made, you know what, that mandatory minimum is too much under the circumstances of this case. So I'm going to grant a sentence reduction. Well, Your Honor, Section 3582 does allow sentencing under the mandatory minimum for any extraordinary and compelling reason. But certainly it's our position that a court could not just say, I don't like mandatory minimums, and therefore I won't apply them. It has to be something about the unfairness of that mandatory minimum in a particular case. Would you agree that one of the principal goals or a major goal of the Sentencing Reform Act was fidelity? The Sentencing Reform Act got rid of parole. It didn't like the situation where someone would be sentenced to 30 years in prison. This was standard at the time. Maximum life sentence was considered to be 30 years. But then after 10 years, the person would be paroled. It got rid of all that. Would you agree that that was a major goal, a major objective of the Sentencing Reform Act? Absolutely, Your Honor. But it was also a goal in 3582 to have a safety valve where judges could still exercise discretion at a later point in the process. Thank you. Justice Sotomayor? Counsel, I'm assuming here that a basic part of your argument is that actual innocence claims are not cognizable under 2255 at all. That's based on our understanding of what the court has said to date. They've never said they are. That's correct, Your Honor. And so whether 2255 would be implicated in some other claim is irrelevant to your claim. This is an issue that couldn't even be raised there, not because of a procedural bar or anything else, but it's just not cognizable. That's correct, Your Honor. And that's one of the difficulties in this case. All right, now may I go back to a problem I have with your case, which is all of the facts that Judge Hellerstein relied upon were known to him at trial. He knew what your client's claim of innocence was. He knew all the evidentiary weaknesses that he wrote about in his current opinion. He knew that only one shot came from your client's gun, et cetera, et cetera. The only thing he did not know was the exact reduced sentence that the co-conspirators would receive because they were sentenced after your client, but he knew they were going to get a substantial reduction because they were co-operators. How do we call that new and compelling evidence, compelling or extraordinary evidence? It's all, there's nothing new. I would have an easier time if I thought that actual innocence had been proven after the fact. Yes, Your Honor. There was another fact that Judge Hellerstein did take into account that he had not focused on previously, which is that the getaway driver was sentenced to two years in prison, and that suggested to him that the government itself had concerns about the credibility and the reliability of the co-operator's testimony. Now, you said earlier, and I agree with you, both age and medical condition or any other reason doesn't ever stand alone because there are old people who are not released from prison. There are sick people who are not released from prison. It's one among many circumstances. Your claim of, and I put it in quotes, actual innocence doesn't stand alone. But what does it stand with in this case? There certainly was no medical need. There's no age need. There's no extraordinary circumstance to this individual. So why isn't it only one factor? What it stands with, Your Honor, is the fact that despite the judge's concern about innocence, that this defendant was sentenced to a life in prison. That is what bothers me, that it's a judge's disquiet as opposed to an individual circumstance. Because no matter how you look at extraordinary and compelling, it focuses on the individual, not on the judge's disquiet. By the way, I was a district court judge, and I have a great deal of respect for the disquiet judges feel. It happens to every district court judge. There's a case where you really struggle. But can we, in the facts of this case, denote that that is an extraordinary circumstance? Well, what I would say, Your Honor, is that this is the sort of discretion that judges generally have in sentencing, and it's reviewed on appeal for abuse of discretion. The Court of Appeals didn't review it for abuse of discretion. Well, I agree with you, and maybe that's what they should have done. But I am troubled by this. Justice Kagan? Just to continue in that vein, do you think that the district court here on the initial trial could have received the jury's verdict of guilt and said, you know, I'm not going to overturn that verdict of guilt? I have no basis for doing that. But in the sentencing, I'm going to reduce the sentence because I feel disquiet with respect to that verdict. Could the district court have done that? Well, certainly not in this case, Your Honor, because it was a mandatory life sentence. But as a general matter, while the court does have to take the verdict as given when conducting the guidelines analysis and the 3553 analysis, how the court weighs the different factors, such as personal circumstances, the nature and the characteristics and history of the defendant, it can certainly weigh those factors. Well, personal circumstances, you broadened it out. I really was limiting it to would it be appropriate for a district court to say, I'm not overturning the jury verdict, but I'm not sure I agree with it. Therefore, I'm going to reduce the sentence below what I would ordinarily give. I think in weighing the 3553 factors, as long as the court recognizes that the verdict was guilty and takes that into consideration, how it weighs the verdict and the offense with the personal circumstances could be taken into account and can result in a lower sentence. Thank you. Justice Gorsuch? I'm not sure I understood that last answer. I don't doubt 3553 factors are very broad and give the district judge, rightly, lots of discretion in sentencing when there's not a mandatory minimum. But I wouldn't have thought that one of the circumstances, personal circumstances that a judge could take into account, as Justice Sotomayor says, really nothing to do with the defendant. It has to do with the judge's own disquiet, perhaps reasonably so, about the jury's verdict. And I had thought in our legal system, the jury's verdict on the facts is not something a court can impeach unless it's clearly erroneous. That's correct, Your Honor. And what I was referring to in answering Justice Kagan is that the judge here, for example, referenced the fact that the defendant had no history of violence, that he was a working man, that he- All of that's fair game. I agree with you. I'm not, again, I don't question any of that. But the appropriate remedy for disquiet about a jury verdict is to set it aside as, you know, beyond the pale. It isn't to say, I disagree with the jury about the facts, and therefore I'm reducing the sentence, is it? Well, normally it isn't, but under 3582- No, I understand your 3582 argument, but under 3553, that's not an appropriate consideration, is it? It could be a consideration when weighing all the factors, deciding how much weight to give to questions like protecting the public from the defendant or the- I think in that, protecting the defendant from the public, you have to take as given, again, the jury verdict. I don't think you get to impeach it by saying, I just disagree with it. Right. I agree with that, Your Honor, but the question is how to weigh it. Thank you. Justice Kavanaugh? Just one more on the role of the commission. Do you think the commission could, under 994-T, say that claims of error in the conviction or sentence are not cognizable, are not extraordinary and compelling circumstances for purposes of these motions? Yes, Your Honor. The commission has the discretion to decide what is within the meaning of the words and to take the position that certain things are off the table, yes. And you think if they said that as to this issue, that would be-that you wouldn't be able to challenge that? That's correct, Your Honor. District courts would have to comply with that guidance. Thank you. Justice Barrett? Justice Jackson? So as I see the question presented as we've crafted it, we are not actually being asked in the context of this case to make a determination about whether a district court's disquiet or concerns about actual innocence can qualify as extraordinary or compelling circumstances. I mean, this was the exchange you just had with Justice Kavanaugh. If the commission said those things are off the table, then they'd be off the table. Instead, I read our revised question presented to be saying that anything that could possibly be raised in the context of a habeas petition is off the table. And I guess I'm a little worried about the workability of that when we think about what could be raised in the context of a habeas petition. Ordinarily, the habeas petition raises the claim that the defendant has the right to be released on the grounds that the sentence or the conviction is unlawful. Here, the judge said the conviction is not unlawful. He made an express statement that he wasn't relying on any claims about the lawfulness of the conviction. He just had these other concerns. So I guess this is a long-winded question, but it worries me that we would have a rule that says anything that arises in the context of habeas can't be considered in this proceeding because I don't know how you would do that from a workability perspective. Your Honor, I agree there is a workability problem, and then there's also the perverseness of having claims that could not be brought in habeas would not fall within that rule, which I think is why the government went to a rule that its only personal circumstances are allowed to be considered. That was their way of solving my workability concerns? I think that is, Your Honor, and there's no way to read that out of the statute. Thank you. Thank you, Counsel. Mr. Fagan. Thank you, Mr. Chief Justice, and may it please the Court. Section 3582C1A1 is a narrow exception sentencing finality that allows a court to reduce a valid sentence in limited exceptional circumstances that aren't otherwise addressed by the criminal justice system. I think what you've just heard and what's in their briefs is a proposal to make it instead an open-ended loophole to challenge the validity of sentences continuously through a potentially endless series of collateral attacks on the criminal judgment. The question whether a collateral attack on the criminal judgment compels relief is a question that's addressed by Section 2255, which draws a careful and deliberate line between finality and error correction. And yes, Justice Kagan, it's a strict line, and ordinarily a prisoner's claim isn't going to be compelling enough to meet it, but that doesn't mean that the claim can be wrenched out of context and, although procedurally and substantively deficient, can be used to create extraordinary and compelling circumstances that warrant reducing a valid sentence, whether or not it's window-dressed with other factors that aren't themselves extraordinary and compelling reasons that warrant a sentence reduction and would be irrelevant under Section 2255. If you could do that, then it would really eradicate all the substantive, procedural, and temporal limits on Section 2255 claims and on collateral attacks on criminal judgments in general. And they say they can't find a single case in which that's happened. I think the Court has one in front of it right now. It may be true that disquiet would get you — a claim of disquiet would get you nowhere under Section 2255, Justice Sotomayor, but I don't think that's to its benefit as a recycled claim under Section 3582C1A1. I'm sorry, Justice Thomas. Mr. Fagan, there was some discussion earlier about several district court cases where the sentence had been reduced. Was the provision there — I think it was 4205G. Is that the equivalent of the provision here, the compassionate release provision here? It's not an equivalent. It's more like an ancestor to this particular provision. And let me — so one big difference is that the exact language I was just referencing that requires extraordinary and compelling reasons that warrant a sentence reduction is language you'll see in the current statute and the one — and it's language from the original Sentencing Reform Act that wasn't in 4205G. But let me address the two cases that were brought up this morning. Banks is a case of rehabilitation, and that was the reason for release. And that's one thing we absolutely know for sure — and this Court has several cases on this topic — that Congress was trying to cut off as a reason for release, and 994T will tell you that as well, when it enacted the Sentencing Reform Act. The other case is Diaco, which was decided several years before the Sentencing Reform Act was enacted. With all due respect to the District of New Jersey, we're not 100 percent certain that Congress would have been aware of it. And frankly, we think it's wrong. And even then, it's a very exceptional circumstance where essentially what happened was another district judge went beyond that district judge's authority to grant relief to all the co-defendants of this one defendant. And without any other mechanism to kind of effectuate the original sentencing intent, which had gotten frustrated by ultra-virus action by another district court, the district judge urged the BOP to file a motion to allow for early release on parole if the parole commission were to grant it. And the district judge in the case decided to grant it because it was — I think he considered it as the least bad thing he could do to solve the rather unusual circumstance that came up there. But I don't think it's the camel's nose under the tent to allow legal claims. And just to answer one question, you asked my friend on the other side, Justice Thomas, the word compassionate release actually is the title of the provision in the First Step Act that enacted the amendments to Section 3582C that we're talking about, you know, some of which are at issue today. And I think the 2018 enactment of the First Step Act actually reinforces the original intent of Congress that this be for exceptional circumstances, not that it just be a loophole for Section 2255. It does say exceptional circumstances, but it doesn't say solely personal circumstances. So I don't really know — I mean, I appreciate the government intuiting that, but we do have some indication that Congress was thinking beyond just personal circumstances from the legislative history. We have a case — and I'll find the case name in a moment — but in which Justice Scalia indicated that compassionate release might be available — you might know the case I'm talking about for — Justice — Yeah, for, you know, an unusually long sentence. So where's the personal circumstances limit that the government is relying on here? So I think there's a lot of reasons to think that, Your Honor, and there's a lot packed into that question, or a few parts packed into that question. But first of all, I think the very language, extraordinary and compelling circumstances that warrant a sentence reduction requires a court to look at the backdrop of sentencing law. It's not extraordinary and compelling in a vacuum. It's extraordinary and compelling reasons that warrant a sentence reduction. Second, I think there's a category mismatch when we're talking about these kinds of legal claims here, because as has been noted this morning, when you raise a Section 2255 claim, you're challenging the validity of the criminal judgment. And Section 3582C1A1 — we talk about this in our brief — presumes that the judgment is valid, and it's about reducing a valid sentence. And there's kind of a category mismatch with taking a reason why the sentence is invalid — But why doesn't that cut against you? That was the point I was trying to make to your colleague on the other side, which is that to the extent these are two different things, and that compassionate release assumes a valid sentence, and that you need to have — or you're asking for a sentence reduction notwithstanding that, why then are we evaluating your ability to get one of those vis-à-vis what you could do in the other world, where you'd be claiming that your sentence or conviction is invalid? I think it cuts entirely in our favor, Your Honor, because it shows that these are meant for personal circumstances, because it's a — it doesn't really make any logical sense to reduce a valid sentence because of a procedurally or substantively deficient claim, the point of — the point of the claim being that the sentence was actually invalid. That is, you're taking, to use a slightly pejorative term, a kind of half-baked claim of legal error in a conviction or sentence, and saying, okay, yeah, it's not quite there, but that's a reason for taking the sentence as a given and reducing it. I don't think that makes sense, and that points again toward personal circumstances. Well, one of the things I find perplexing about this statute is that I would have thought that this statute would have required changed circumstances, you know, more even than personal circumstances, that it would have required changed circumstances, that that's the reason for reducing a sentence. Why doesn't the statute say that? And is that what you're suggesting the statute really is all about? I do think it is for changed circumstances, Your Honor. I think if you look at the legislative history, that's what Congress was anticipating. I think that's why the BOP filed these motions to begin with and continues to have a gatekeeper role today. I think we see that in 3582d, which are the notification requirements for the BOP, which require notifications in cases of terminal illness, which is actually kind of a canonical example that Congress was thinking of. You can look at the original Senate report for the Sentence Reform Act at pages 55, 121, and 173, if you want some evidence of that. And I think we find any other notification circumstance would be when someone is too medically or mentally infirm to file it. I mean, there might be changed circumstances that are not personal in nature, that are in fact legal in nature. And so that there would be a divide between your personal circumstances line and the changed circumstances line. And the example I'll give you is, you know, suppose the statutory construction, the way the courts interpret a given statute have changed since the initial sentencing, such that somebody was sentenced to, let's say, a long sentence. And then the courts say, no, if he were coming up today, actually, he wouldn't be found guilty at all. What do you do with that? Is that the kind of thing that can be taken into account under this statute? No, Your Honor. It's not the kind of thing that can be taken into account because that's something that's otherwise addressed in the legal system. And the court had a case about this a few years ago. It was Jones v. Hendricks. And in Jones v. Hendricks, the question was whether someone who had, or we didn't think he actually had a valid claim, but who had a claim that there was a statutory error in his conviction, but he'd already raised it once on 2255, could get relief under 2255. And what the court said in Jones was, no, because Congress specifically thought about when someone in that situation should be able to get relief. And it allowed relief on a second or successive only for constitutional claims, not for statutory claims. Now, on their view... Yes, so that's right. You couldn't do this by way of a 2255 motion. But, gosh, it does seem as though there a safety valve would be appropriate, given that somebody is serving a lengthy sentence for something that is not a crime at all. And if we're sort of thinking of this statute as a changed circumstances statute, not as a kind of general do-over for all your claims that you could have brought way back when, but as a changed circumstances statute, that would seem to me to be potentially appropriate. Well, Your Honor, if Congress wants to allow a remedial mechanism for that, it would be free to do so. It could add points the Department has either proposed or at least considered proposing a new 2255H3 that would allow that. It is the kind of claim you might be able to bring on a first 2255, and it would be, you know, provided it were brought in time. And Congress can change the limitations on 2255 that it has. But it's drawn a line between finality and error correction, and I don't think it meant for Section 3582C1A1 to be kind of a loophole for whatever... I'm sorry? I'm sorry. For whatever it had limitations it had imposed. Sorry, Justice Kavanaugh. That was not important enough to interrupt you. It was. Could the Commission do that? Could the Commission? The Commission, under its authority under 994. No. I mean, I think this gets a little bit... Let me finish what Justice Kagan was talking about. In other words, your answer to Justice Kagan, while Congress could do that, my question is, could the Commission, under its broad authority under 994T, do the same thing or not? And if not, why not? No, we don't think that the Commission in a post-Loeb or Bright world has the authority to make something that's not an extraordinary and compelling reason that warrants a sentence reduction into something that is an extraordinary and compelling reason that warrants a sentence reduction. I don't know how Loeb or Bright affects that, but extraordinary and compelling are both capacious terms and leave a lot of discretion, aren't they? Then let me give you a longer answer to this, Your Honor, which goes probably a little bit more to the next case. But first of all, it's just a pure question of session or interpretation. If these words don't cover it, then the Commission can't add them. Second, the Commission's required to comply with all provisions of law under 994A, and they acknowledge that. They actually accept something from their new Rule B-6 because it's covered by 3582C-2, and they don't think they can expand on that. But even beyond that, Your Honor, the Commission doesn't have just general authority to override general provisions of sentencing law because the Commission isn't the exclusive interpreter of extraordinary and compelling circumstances. So doesn't the statute make them that in some way? This goes to a question about the ordering and the steps and what the government's view is about how much judges have to defer to the Commission's views on this. That's exactly where I was going, Your Honor. So if you look at section 3582C-1A-1, you'll see that there's actually two threshold findings that a court needs to make before the court is going to be empowered to look at the 3553A factors and reduce the sentence. One of them is that the court has to find extraordinary and compelling circumstances, and the other one is that the court has to find that a reduction would be consistent with the policy statements of the Sentencing Commission. This Court's decision in Coons v. United States—I know there are two cases with similar names, I'm talking about the one with an S—addresses exactly identical language that appears in 3582C-2 and calls it language of limitation. And I think it's even more so here because the District Court has to make an independent evaluation, even if there is a policy statement addressing it, of extraordinary and compelling circumstances. And of course, I'm sure Petitioner would agree that the court has to make an independent determination of it, because otherwise, if there were no applicable policy statement, which is what the Second Circuit found in the context of Petitioner's case, there would be no way to grant any sentence reductions at all, because no sentence reduction— You'd certainly have to make an independent judgment where there were no policy statement, but I understood Petitioner to agree with Justice Kavanaugh that if there were such a policy statement, the court would have to defer to it. Well, that—if there were such a policy statement, Your Honor, it wouldn't change the structure of the statute. And the structure of the statute very clearly and explicitly lays these out as two separate steps. So the court has to itself find extraordinary and compelling reasons, and then it has to see whether its finding or the other—any of its other base—anything else it might do with regard to the sentence reduction, there are some additional constraints the Sentencing Commission has replaced on reductions are consistent with what the Sentencing Commission does. My point is that we know they're independent steps, and the reason that someone like Petitioner was able, we think, incorrectly to get a sentence reduction, even in the absence of any policy statement—that is, the absence of any commission definition at all of what its view of extraordinary and compelling circumstances are—is that these are, in fact, two separate steps. So it's a particularly inappropriate circumstance to completely defer to the commission because, of course, the commission is only telling us what it thinks are extraordinary and compelling circumstances for purposes—reasons, I'm sorry—for purposes of limiting the statute under its own policy statements when the court gets to that second step. On that second step, if the commission has not said that something is extraordinary and compelling—so, in other words, it's been silent on it, it's said other things are extraordinary and compelling, but has not said this is—would it be permissible for a district judge, then, to say that such a reduction is consistent with the applicable policy statements? In other words, how do you read commission silence on the particular issue? We read it as preclusive, Your Honor. We don't think that this could be brought today under the commission's current policy statement. I mean, maybe there would be some debate about that, but I don't think there would be much. I think it's always been understood that the commission's— And that's kind of the end of it, then, for this case, isn't it, under your view? I mean, that's one way that's the end of it, which is the commission has not issued a policy statement that authorizes or that suggests something like this is extraordinary and compelling, and that's an independent requirement of the statute, and that's the end of it. Is that one of your arguments? Well, that's not going to be the end of this case, because it arose when the policy statement wasn't in effect, so we wouldn't apply the policy statement to him unless there— There's never been a policy statement that authorizes this— That's correct, Your Honor, but I don't think the Court can rest on that as a potential limitation to the loophole, because, as we'll get into more in the next case, there's always the possibility that the Sentencing Commission could do that. We could have another period where, for some reason, there isn't a policy statement, and then it becomes a free-for-all. There also is, and we think it's a quite limited one, there is a subsection B-5 to the current policy statement, 1B-113, which is an other reason statement, and we could imagine prisoners correctly or not trying to, we think, incorrectly, but I'm sure they would assert correctly, trying to jam in what are their recycled 2255 claims under that. And the real problem with that, and this gets to something you were discussing with Petitioner's counsel, Justice Kagan, is what we're doing is we're taking the limitations that 2255 imposes and we're replacing them with section 3582c1a1 considerations to make some kind of Frankenstein monster that I don't think is what Congress intended. For instance, take your example of someone who misses the filing deadline by three days or three weeks or even three years, and the person says, well, okay, there is a doctrine that would handle that under 2255, it's equitable tolling. Now, I can't show you any circumstances that are sufficient for equitable tolling, but what I can show you is that I've really rehabilitated in prison, so that's the reason to let me out. That is nothing but a complete end-around to a section 2255 claim. You are using the 2255 claim there as essentially the sole reason for reducing the sentence, except for rehabilitation, which is the one thing we know Congress did not want to be the reason that people are granted early release. But I guess I'm trying to understand how your rule is workable in any real way, even with that example. So suppose you have an 80-year-old prisoner who has cancer, and I take it that your rule is that that's the kind of classic personal circumstance that can be considered in the context of compassionate release. But that could also be considered in the context of a habeas motion with respect to something like the tolling issue that you raised. So I guess I don't understand why you're saying or how you could be saying that anything that comes up in the context of habeas can't be ever considered in this context. And maybe I have your rule. We're not saying anything that could ever be relevant. Okay, so what are you saying? So I'm not saying like, for example, equitable tolling like I was in a coma, you know, that I suppose that might affect someone's claim of illness under Section 3582 motion. Our argument is that something that would be grounds for attacking the validity of the original criminal judgment, that is, the kind of thing that would be raised as a Section 2255 claim, this would be the claim, not just some attendant circumstance, but the claim that might be used for something like equitable tolling, can't be advanced as an extraordinarily  Even if we're not trying to advance it to attack your sentence in this context, even if you accept that your sentence is valid. That's right, Your Honor, because by hypothesis, anything else the prisoner is alleging for this question ever to make a difference, nothing else the prisoner alleges is itself going to be extraordinary and compelling enough. So what gets them over the line in these kinds of cases, in order for the question presented in this case to matter, the thing that gets them over the line has to be the Section 2255 claim. I don't think what Congress wanted was for someone to come in and have reasons that aren't enough to get them over the line. So the canonical example being rehabilitation, the court says no, and the prisoner says, well, here's my ace in the hole. It's a Section 2255 claim. Now, it would never get anywhere because it's substantively deficient, and it would be wildly out of time, and I've already filed a Section 2255 motion, but hey, here's what I got, and if you add this to my rehabilitation, which is insufficient, to Except, Mr. Fagan, what you're assuming is bad faith, really, and that's not the way we function. What you want is a rule that says not only if it can be brought into or should have been brought under 2255, but even if it couldn't have but might have been, and I don't know how far your conflict articulation is going to go, then it could never be an exceptional circumstance standing alone. Well, nothing standing alone is ever an exceptional circumstance. Neither age nor medical condition standing alone qualifies you for a reduction. It does have to be extraordinary and compelling, and for that, you need something more. So I understand in this case the argument that the judge is disquiet, standing alone should not permit him to modify a sentence, that it had to have been with something else, and I can accept the argument that the something else wasn't much here, but you want a more absolute rule, and I fear that an absolute rule will be twisted and create its own nightmare because there is nothing that standing alone is extraordinary and compelling. Your Honor, that's not – the rule that we're asking for is the rule I was articulating to Justice Jackson, or at least attempting to articulate to Justice Jackson, which is that attacks on the validity of the conviction or sentence are excluded. No, what I'm trying to say is you can't even consider it, and that's what I'm asking you. Is your rule absolute that way? There are circumstances where it could be one among many factors that lead a court to a sentencing reduction, as it can be one among other factors where the court says, no, I'm not going to do it anyway. Well, Your Honor, I think there – first of all, I don't think there would be any kind of nightmare because this is the way it has worked for the entire history of Section 3582C1A1 until the First Circuit decision in – I think it was 2022. So I don't think there would be anything new. If anything, I think their rule would be very complicated and unworkable because all of a sudden we would see any of the 5,000 prisoners who – But you haven't seen – you haven't seen any of that here. Your Honor, their rule – I love the scare tactic, but I look for reality, and it just hasn't happened. And what I look at is the amicus who provides us with case after case where courts are taking their responsibility very seriously. They're writing 50-page, 60-, 70-page opinions, analyzing cases with extreme care. And, Your Honor, I think that's exactly the problem because any of the 5,000 prisoners who file 2255 motions in a year could just keep bringing these same claims or new ones under 3582C1A1 and forcing district courts to respond to their essentially new habeas – We have plenty of ways to handle frivolous filings, Counsel. We do it all the time and quickly. The question is whether – I'm sorry, Your Honor. I think the question is whether Congress was trying to encourage the recycling or the renewal or the creation of new – What we do know is that Congress was permitting sentences to be reopened. And in none of the words it's used does it put in any of the limitations that you're proposing. It does not limit this to personal circumstances, and, in fact, the examples don't. It hasn't limited to only questions of fact and not law, which is what you're suggesting. And it has always included that there might be other reasons, and it's permitted the Sentencing Commission to define those other reasons. Well, Your Honor, I think there is a very strong principle. I think Prysor and other cases are an example of it, and we have some of the others in our brief that statutory schemes should be interpreted in a harmonious whole, and I think reasons warranting a sentence reduction points to that harmonious whole. Except our heck of a line of cases make very clear that 1983 and 2255 are not invalid if there's a way to read both where the validity of the sentence and conviction are not challenged. And here, this is not challenging the validity of the conviction or sentence. It's asking for a modification under a separate statutory authorization, but it's not challenging the validity. But the reason for the reduction is a challenge to the validity. Even something like disquiet is, of course, questioning the validity of the original criminal judgment. And yes, that claim would not be cognizable under Section 2255 because it would be substantively deficient because it's not even clear you can do an actual innocence claim, and if you could, it would require that no reasonable juror would find that the defendant is not guilty. And under motion after motion, he denied relief. Legal relief invalidating the conviction and the sentence, but he didn't grant that. He did something totally different. And then, Mr. Fagan. Yes, sorry, Your Honor. And then what he does do, and this is what we see in this case, is he eventually grants a different statutory mechanism for relief under his basis being disquiet with the verdict and sentencing disparities that are related to his disquiet with the verdict. And again, that is simply just a recycled and, frankly, noncognizable Section 2255 claim. An actual innocence assertion was made on 2255 before, and there's another Section 2255 claim pending in the district court right now that makes the same assertion. I think another way to think about it, in addition to the kind of ace in the hole being a procedurally or substantively deficient attack, we'll need to wait for another day because I'm out of time, Mr. Chief Justice. Justice Thomas. Justice Alito. What you just said, Mr. Fagan, is one of the confusing parts of this case to me, is that when I read your brief, the formulation of the test that you offer is, could the claim of error have been raised under 2255? And I have some sympathy for why that would be an extremely relevant question, but it just does not seem to be a question that applies in this case. Because here, as you say, we've never said that an actual innocence claim could be raised under Section 2255. So sort of the premise of your argument, which is it could have been raised in 2255, sorry, you lost your chance. But the premise of the argument is it could have. And here we don't really know that it could have. The court has never said whether it could have. So the rule doesn't really seem to fit the case, if you understand what I mean. Well, two points, Your Honor. You might, I think, more usefully use the formulation that it would be a claim that attacked, or an asserted reason that attacks the validity of the conviction or sentence. And I think this one would fall into that. And when we talk about Section 2255... So there is a real difference between that formulation and the one you most often give in your brief. So you're now switching from the one you give in your brief to saying, does this attack the validity of the conviction? Well, we said both in our brief, Your Honor. And to the extent we're focusing on Section 2255 claims, I mean, frankly, that's largely as a result of the court-written question presented that we're trying to work within, which I assume kind of was written in a way the court intended to apply to this case. But the second thing I'd say is, to the extent you would include things that would attack the validity of the conviction or sentence, like a claim of disquiet, that just aren't even substantively meaningful enough to get past the first marker on Section 2255 claim, that's all the worse for prisoners in this position. So I think you would write it a bit more broadly. But I would take this as something that could be alleged under Section 2255, and it would simply lose. I think it would make absolutely no sense to have a rule that if you could win, or you could have made your claim under Section 2255, and it would be substantively valid, then you're precluded. But if you would have had a substantively invalid claim, you wouldn't be. Okay. Thank you. Justice Gorsuch? Justice Kavanaugh? Just so I have the government's position clear, where does a prisoner go who has a claim of actual innocence based on newly discovered evidence? So as this Court has explained in, among other cases, Herrera v. Collins, if you have a claim of actual innocence, it's got to be paired with another constitutional claim. Now Congress has made an exception in Section 2255. But the clear answer there is nowhere other than a pardon. Well you could, if it's paired with a claim of constitutional error. If it's not paired. If it's not paired with a claim of constitutional error, I think it's going to have to be addressed through the clemency procedure. Thank you. So just to follow up on that point, Mr. Fagan, would the idea be that if an actual innocence claim, a freestanding claim, is not available under 2255, it's because Congress has implicitly precluded it by not giving a route to raise such a challenge under 2255? Well I think there are a couple of reasons. First, I don't think Congress has disturbed this Court's, this Court has never squarely addressed whether there's a freestanding claim of actual innocence. And I think if the Court were to, contrary to the skepticism, I think the Court, I read in the Court's opinion in Herrera v. Collins, the Court were to decide that such a claim exists. I don't think Congress has precluded it under Section 2255. But if it's not an existing route to post-conviction relief, then I don't think it can be read into Section 2255. That is, Congress wasn't trying to create some new ground for relief. Congress did enact Section 2255-H1, which kind of mirrors the actual innocence exception as a reason why someone, as a showing that a particular prisoner could make to bring a second or successive claim that would otherwise be precluded. But I don't read Section 2255-H1 to authorize that kind of claim as a freestanding claim divorced from constitutional error. I think what it does is, if you can meet the actual innocence bar, it is allowing a second or successive claim that relies on some constitutional ground. I guess I'm just trying to figure out how to articulate the rule. I mean, you offer one way, if we say that if you're going to challenge the validity of a conviction or a sentence, 2255 is your option. That rule I can see making sense. Otherwise, it feels like we would have to decide, if we peg it to 2255 very specifically, like if you could bring this, if this is a cognizable claim under 2255 and you can't raise it under the Compassionate Relief Statute, it seems to me that we have to decide whether an actual innocence claim in a freestanding way is available under 2255, which I take Justice Kagan to be pressing you on. That's why I go with the other formulation, Justice Barrett. And in answer to both you and Justice Kagan, if this helps, we don't really conceive of those things as being different. Section 2255 is the vehicle for raising claims or challenges to the validity of a conviction or sentence. So I think the phrase Section 2255 claim, one might think of as something that has some chance of succeeding if it's brought at the proper time. I think the right way to think about it in this context is just the type of thing that would be, is the proper office of Section 2255. And the space that 2255 fills, the role that it fills within the sentencing scheme, is it's the place you go when you have a challenge to the validity of your conviction or sentence. That place is not 3582C1A1. There's no way that Congress wanted the BOP originally or as the gatekeeper now or district courts to be relitigating claims of actual innocence under Section 3582C1A1, let alone just a mere argument about disquiet. Justice Jackson? I guess it seems to me that that argument really only works if that is the only concern in the 3582 world. I mean, what if we have the 80-year-old defendant who has cancer and other ailments and there's this concern about whether or not his conviction is valid? Why would the government say that that couldn't be part of the overall analysis if there's more than one factor? Well, I think there's two reasons for that, Your Honor. One is one I was suggesting earlier, which is that if you have other claims, I just take, taking your hypo, I will assume for the sake of argument that those other reasons would not themselves be extraordinary and compelling. Well, I mean, Congress has said in 994T, like even when it looked at rehabilitation, it just said it can't be used alone. It took it off the table in its sole form. And I guess I just don't understand why the government isn't doing that sort of thing as opposed to saying you can never look at it. So I have two answers to your question, Justice Jackson. I mean, the first way to look at it is assuming those other reasons are not sufficient on their own, like you gave the 80-year-old and she has cancer. If that weren't enough on its own, then I don't think the ace in the hole can be a procedurally or substantively deficient challenge to the validity of the conviction or sentence. And the reason for that is that wouldn't warrant the sentence reduction. It's not an exceptional and compelling. It adds nothing exceptional and compelling to the mix. The second answer that I would give, which is actually what I was about to say when my red light came on, the other way of thinking about this is this is a repackaged Section 2255 claim. The statute that tells us when there can be relief on a challenge to the validity of a conviction or sentence is Section 2255, and it tells us the circumstances that are relevant. I understand. Thank you. Thank you, Counsel. A rebuttal, Mr. Groenstein? I'd like to start by talking about a question that Justice Kagan asked whether the government's position would be workable. And what the government's position to exclude habeas-like claims would require would be an analysis in each case of whether a claim could be brought under habeas. And what the colloquy about actual innocence shows is that that's not always an obvious question. And to the extent a petitioner under 3582 could not raise actual innocence, which seems to me like it would be the ultimate extraordinary and compelling circumstance shows how the government gets things backwards. The government ultimately tries to deal with the unworkability problem by saying that the rule really is personal circumstances. Not only is that nowhere in the language of the statute, but clearly cases will fall through the cracks. The Setzer case is one of them where the court considered using 3582 to deal with a state sentence that was going to run consecutive. Also, of course, the cancer patient that Justice Jackson referred to, if someone had cancer and was serving a 30-year sentence and had five years left to live, it certainly should be relevant that the conviction that he had was no longer valid or would not be valid today. The only reason to read the statute in a way that is not according to its literal terms is if there's another statute that conflicts. The government talks about how these issues are otherwise addressed in the legal system. That is not the test. The test is whether there is an irreconcilable conflict and whether this reading of 3582 would wholly frustrate the habeas statute. That's what Jones v. Hendricks was where allowing a 2241 would entirely undermine the 2255 restrictions. And so Justice Sotomayor's point about the work that judges are doing in these sorts of cases, judges are doing very comprehensive work and it's not surprising because this is very similar to the work judges do every day in sentencing when they previously looked at heartland departures. They look at what makes this case extraordinary. And judges are well-suited to do that subject to review by courts of appeals. And finally, as to Justice Kavanaugh's point about the commission not speaking yet on this issue, I think it's relevant to go back to the language of the statute first, which is the words are extraordinary and compelling. They are, in Your Honor's words, capacious. They leave a lot of discretion to the district courts. But there's another very important feature to the statute, which is that there's a delegation to the Sentencing Commission to, if there are things to be taken off the table, if changed circumstances should be the touchstone, that is for the Sentencing Commission. Thank you, counsel. Thank you, Your Honor. The case is submitted.